UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

In re Application of YOLANDA FIERRO ELETA and VICTORIA-EUGENIA FIERRO ELETA for an Order to Conduct Discovery for Use in a Foreign Legal Proceeding Pursuant to 28 U.S.C. § 1782.

Civ. No. 05-22671 CIV-HUCK

MAGISTRATE JUDGE SIMONTON

_____/

# MEMORANDUM OF LAW IN SUPPORT OF APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR ORDER ALLOWING DISCOVERY FOR USE IN A FOREIGN PROCEEDING

COFFEY & WRIGHT LLP
Robert T. Wright, Jr.
Florida Bar No. 185525
2665 S. Bayshore Dr.
Miami, Florida 33133
(305) 857-9797

*Counsel for Applicants*

Of Counsel:

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Barry H. Garfinkel
Angela G. Garcia
Four Times Square
New York, New York 10036
(212) 735-3000

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 3

ARGUMENT ............................................................................................................................ 7

APPLICANTS ARE ENTITLED TO DISCOVERY IN THIS DISTRICT
PURSUANT TO 28 U.S.C. § 1782 ........................................................................................... 7

I.     Applicants Satisfy All Statutory Requirements of 28 U.S.C. § 1782 ................................... 9

     A.     Witnesses Reside or Are "Found" in This Judicial District ...................................... 9

     B.     The Discovery Sought by Applicants Is for Use in a Proceeding in
           a Foreign Tribunal ................................................................................................. 10

     C.     Applicants Are "Interested Persons" Under 28 U.S.C. § 1782 ............................... 11

II.    All Discretionary Factors Weigh Heavily in Favor of Granting Discovery ...................... 11

     A.     Respondents Are Not Participants in the Spanish Litigation, and
           Thus Are Beyond the Jurisdiction of the Spanish Court ........................................ 11

     B.     The Spanish Court Has Welcomed Judicial Assistance from
           American Courts .................................................................................................... 12

CONCLUSION ....................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page**

In re Application of Sarrio S.A., 173 F.R.D. 190 (S.D. Tex. 1995) ................................................. 7

In re Bayer AG, 146 F.3d 188 (3d Cir. 1998) ................................................................................. 7

In re Commissioner's Subpoenas, 325 F.3d 1287 (11th Cir. 2003) ................................................. 8

Edelman v. Taittinger, 295 F.3d 171 (2d Cir. 2002) .................................................................... 7, 9

Esses v. Hanania, 101 F.3d 873 (2d Cir. 1996) ............................................................................. 10

Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095 (2d Cir. 1995) .............................................. 7, 8

In re Gianoli Aldunate, 3 F.3d 54 (2d Cir. 1993) ...................................................................... 1, 8, 10

In re Guy, No. M 19-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) ....................................... 10

Intel Corp. v. Advanced Micro Devices, Inc., 124 S. Ct. 2466 (2004) .................................... 8, 11, 12

Lancaster Factoring Company v. Mangone, 90 F.3d 38 (2d Cir. 1996) ....................................... 10

In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-au-
  Prince, Republic of Haiti, 669 F. Supp. 403 (S.D. Fla. 1987) ........................................ 1, 8, 9

In re Letter Rogatory from Justice Court, District of Montreal, Canada, 523 F.2d
  562 (6th Cir. 1975) ................................................................................................................. 9

In re Letters Rogatory from the Court of First Instance in Civil Matters, Caracas,
  Venezuela, 42 F.3d 308 (5th Cir. 1995) ................................................................................ 8

In re Letters Rogatory from Tokyo District, Tokyo, Japan, 539 F.2d 1216
  (9th Cir. 1976) ........................................................................................................................ 1

In re Metallgesellschaft AG, 121 F.3d 77 (2d Cir. 1997) .............................................................. 11

In re Noboa, Misc. No. M18-302, 1995 WL 581713 (S.D.N.Y. Oct. 4, 1995) ............................. 10

Ratliff v. Davis Polk & Wardwell, 354 F.3d 165 (2d Cir. 2003) .................................................... 9

In re Request for Assistance from Ministry of Legal Affairs of Trinidad &
  Tobago, 117 F.R.D. 177 (S.D. Fla. 1987) ............................................................................. 8

In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago, 848 F.2d 1151 (11th Cir. 1988) ................................................................. 8

In re Request for Judicial Assistance from Seoul District Criminal Court, Seoul, Korea, 428 F. Supp. 109 (N.D. Cal.), aff'd, 555 F.2d 720 (9th Cir. 1977) ..................... 9-10

In re Servicio Pan Americano de Proteccion, C.A., 354 F. Supp. 2d 269 (S.D.N.Y. 2004) ................................................................................................... 12

United Kingdom v. United States, 238 F.3d 1312 (11th Cir. 2001) .................................... 8

**Treaties, Statutes and Rules**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ........................................................................................................................ 12

Treaty on Mutual Legal Assistance in Criminal Matters, U.S.-Spain, Nov. 20, 1990, 1730 U.N.T.S. 113 ....................................................................................... 12

1 U.S.C. § 1 .................................................................................................................... 9

28 U.S.C. § 1782 ................................................................................................... 1, 3, 7, 9, 11

28 U.S.C. § 1782(a) ................................................................................................... 7, 9

**Other Authorities**

S. Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782 ............................... 11

Applicants Yolanda Fierro Eleta and Victoria-Eugenia Fierro Eleta respectfully submit this memorandum of law in support of their ex parte application, pursuant to 28 U.S.C. § 1782, for an Order authorizing discovery from International Finance Bank ("IFB"), a corporation incorporated in Florida and headquartered in Miami, and individual witnesses Nelson Alvarado, Myriam Nicholls-Reyes, Amadeo Lopez Castro, and Andrea Comacho, all of whom are current or former employees of IFB, for use in aid of a foreign proceeding.[1]

## PRELIMINARY STATEMENT

This request arises out of a Spanish proceeding brought by Applicants against their brother Guillermo Fierro over the division of the estate of their later father, Ignacio Fierro Viña. The decedent's will left his estate, believed to be worth at least 1 billion dollars, in equal shares to his five children., subject to their mother's limited life interest.[2] As the result of strokes which rendered the father unable to attend to his affairs, the brother, Guillermo, for at least a decade before his father's death in 2002, effectively was, and continues to be, in sole control of his father's international commercial, financial, and industrial empire. As part of a calculated plan to wrest control and ownership from his sisters, Applicants believe that Guillermo has for years hidden and diverted assets and information in an effort to strip his sisters of their rightful

---

[1]  Applications for discovery pursuant to § 1782 are typically filed ex parte. See, e.g., In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-au-Prince, Republic of Haiti, 669 F. Supp. 403 (S.D. Fla. 1987) ("Haiti"); In re Gianoli Aldunate, 3 F.3d 54 (2d Cir. 1993). See also In re Letters Rogatory from Tokyo Dist., Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976) ("Letters Rogatory [issued pursuant to § 1782] are customarily received and appropriate action taken with respect thereto ex parte."). In the event the court issues an order authorizing § 1782 discovery, the witnesses from whom discovery is sought will have the opportunity to move to narrow the scope of the discovery or for other relief.

[2]  While still participants in the Spanish proceeding, Applicants' other two sisters, Aurora and Alejandra, are believed to have each reached a settlement of their claims on the estate with Guillermo.

share in their father's estate and to force them, by the weight of his position and his privileged access to the estate's resources, to accept his dictates on how the estate should be divided.[3]

IFB, a bank headquartered in Miami, is one of the assets of the estate that Guillermo has failed to declare to the Spanish court. Applicants believe that the decedent was the beneficial owner of IFB, but placed the shares in the name of his son, Guillermo, partially for the purpose of minimizing tax exposure in Spain. (Application ¶ 16 and Ex. 13.) Applicants further believe that IFB has been instrumental in a series of transactions by which Guillermo has removed from his father's estate shareholdings in seven match manufacturing companies in Latin America. (Application ¶¶ 21-28.)[4] Also, after the decedent's death, dividends earned by shares he owned in his own name at one of the match companies were being deposited into an IFB account controlled by Guillermo. Based on the foregoing, Applicants seek both documents and other information from IFB and four of its former employees, Mr. Alvarado, Ms. Nicholls-Reyes, Mr. Castro, and Ms. Camacho, that will assist them in demonstrating to the Spanish court that their father's estate is the rightful owner of, among other things, 100 percent of the shares of IFB, the shares in the seven Latin American match companies now under Guillermo's control, the dividends earned by those shares, and accounts at IFB held in the decedent's name or for his benefit.

---

[3] See Company List (Application Ex. 1) (showing an international network of over 220 operating and holding companies which Applicants believe are, directly or indirectly, managed, owned, or controlled by Guillermo, his agents or entities under his control).

[4] The seven match companies, all of which are located in South America, are: (i) Fosforera Peruana S.A. in Peru ("Fopesa"); (ii) Fosforera Centroamerican S.A. in Guatamala ("Focasa"); (iii) Fonandes S.A. in Colombia ("Fonandes"); (iv) Fosforera Suramericana C.A. in Venezuela ("Focusa"); (v) Fosforera Ecuatoriana, S.A. in Ecuador ("Fesa"); (vi) Fosforos Sud Americana S.A. in Argentina ("CGFSA"); and (vii) Fosforera Brasileira in Brasil ("Fobras"). (Application ¶ 23 and Ex. 20.)

2

This is a text-book case for the application of § 1782 to obtain discovery assistance for use in a foreign proceeding. Discovery of documentary evidence and witnesses in this district is essential to assist the Spanish court to reach a decision on a fully developed record regarding the inventory, valuation, and subsequent division of the estate. This request for discovery under 28 U.S.C. § 1782 is particularly pressing in light of a hearing on November 16, 2005 that the Spanish court has scheduled for the taking of inventory of the estate's assets. (March 2, 2005 Order, Application ¶ 14 and Ex. 6.)[5]

Applicants' request for discovery under 28 U.S.C. § 1782 from the United States District Court for the Southern District of New York regarding other information located in New York about the estate's assets and from different witnesses was granted on July 27, 2005. (Order, dated July 27, 2005, Application ¶ 15 and Ex. 11.)

## FACTUAL BACKGROUND

### THE PROCEEDING IN SPAIN

On June 15, 2002, several years after a stroke had left him unable to manage the business empire he had created, Mr. Fierro Viña died in Madrid, leaving a will naming his five children as equal heirs of his estate. In June of 2003, after Guillermo had repeatedly refused to provide them with complete information about the extent and location of their father's assets, the four Fierro sisters filed a petition with the Court of First Instance, No. 54 in Madrid, for a judicial division of inheritance. The court granted the request and by order of February 26, 2004, appointed all five siblings co-administrators of the estate. (Application ¶ 9 and Ex. 3.)

---

[5] Of course, any effort by Applicants to obtain information here is without prejudice to Guillermo's right to argue in the Spanish proceeding that IFB should not be part of the estate. What is (or is not) part of the estate and what rightfully belongs to each heir is for the Spanish court to determine, not a court in the United States. But Guillermo may not simply assert ipse dixit, as he has consistently done thus far, that there are simply no estate assets to report outside of Spain.

3

In its February 26 order, the Spanish court also directed Guillermo, as the "the sole holder" of information concerning the estate's operations, to submit an inventory of all the estate's assets. (Id. at 3.) Guillermo did not comply, and has taken the position with the Spanish court that the estate does not own or control assets outside of Spain. (Application ¶ 10 and Ex. 4.)

The Spanish court has expressed its approval of Applicants' efforts in the United States to gather information about the assets of their father's estate. (Application ¶ 12 and Ex. 9.) As recently as July of this year, the Spanish court stated that any co-heir can "take actions that may benefit him or her, including without question, those that go to adding to the decedent's inheritable estate, <u>even in foreign courts</u>." (Id. ¶ 13 and Ex. 10 (emphasis added).)

In its March 2, 1995 order, the Spanish court scheduled a hearing for November 16, 2005 to compile a comprehensive and accurate inventory of all the assets which should be included in the decedent's estate and thereafter divided equally among the decedent's five children. (Id. ¶ 14 and Ex. 6.)

### <u>EVIDENCE IN FLORIDA</u>

#### *Ownership of IFB*

IFB was incorporated in Florida on June 23, 1983 under the name Westchester Bank. In February 1992, it was purportedly acquired by Guillermo, and later renamed "International Finance Bank." (Application ¶ 16 and Ex. 12.)

Although Guillermo was the named purchaser of IFB, Applicants believe that this was done partially for purposes of minimizing tax exposure in Spain and that the true purchaser was the decedent, who is believed to have provided all the funds for its purchase. (Londoño Affidavit ¶ 4.) Indeed, in a series of interviews with a Guatemalan newspaper in 1992, Guillermo

acknowledged that IFB was one of the ventures established by his father in the Americas. (Application ¶ 17 and Ex. 14.)

Consistent with being the beneficial owner of IFB, the decedent hired the first president of IFB, made frequent visits to IFB, presided over board meetings, had an office in the premises, and had the final say on all major decisions. (Londono Affidavit ¶¶ 3, 4.) He also selected and purchased the property on Brickell Avenue, where IFB moved its headquarters to in April 1994. (Id. ¶ 5.) Even now, IFB's website describes itself as part of the Fierro Group (aka, the IF Group, Grupo Fierro, or Grupo IF), the umbrella organization for assets owned by the decedent. (Application ¶ 18 and Ex. 15.)

### *The Use of IFB Accounts in Sham Transactions*

After the decedent had become incapacitated, Guillermo is believed to have reorganized the corporate and shareholding structure of the Fierro Group companies outside Spain so as to transfer ownership or control of those companies from his father to himself. Certain of the companies involved in these restructurings held accounts at IFB, and substantial portions of the funds used to effect the transactions flowed through those accounts. (Application ¶¶ 21, 24-25.)

For example, in October 2000, Grupo Iberoamericano de Fomento, S.A. ("GIF"), an entity controlled by Guillermo, entered into a contract to "purchase" for $7.6 million the shares in seven match companies in South and Central America that were owned by Keystone Investment Corp. ("Keystone"), a Liberian corporation believed to be also owned or controlled by Guillermo. (Application ¶ 23 and Exs. 20, 21.) Part of the financing for this purchase was provided by Farmington, S.A. ("Farmington"), another company believed to be controlled by Guillermo. (Id. ¶ 25 and Ex. 23.) All the funds for these transactions were transferred through bank accounts held at IFB by GIF, Farmington, and Keystone. (Id. ¶ 25 and Exs. 24, 25)

5

Keystone had purchased its shares in the match companies just five months before, in May 2000, from seven different holding companies. (Id. ¶ 24 and Ex. 22.) These seven holding companies, in turn, are believed to have purchased their shares in the match companies from holding companies or testaferros, which held the shares for the benefit of the decedent, or directly from the match companies that are part of the Fierro Group. (Id. ¶ 24 and Ex. 2.)

### *Dividends Belonging to the Decedent*

The evidence also shows that the decedent held three percent of the shares in an Ecuadorian match company in his own name. (Application ¶ 30 and Ex. 37.) After his death, these dividends were not sent to the open account of the estate, but to an account held in the name of Record Ltd. at IFB ("Record"). (Id. ¶ 30 and Ex. 38.) The same Record account at IFB was also receiving dividends from a Guatamalan match company for shares that continue to be held by Proconin S.A., one of the holding companies that sold shares to Keystone. (Id. ¶ 30 and Ex. 39.) Appellants believe that IFB is in the possession or control of information that will allow them to ascertain the ownership of Record, and thereby trace some of the dividends from the match companies that belong to the decedent's estate.

### *Individual Witnesses*

Witnesses Nelson Alvarado, Myriam Nicholls-Reyes, Amadeo Lopez Castro, and Andrea Camacho are present or former officers or employees of IFB. Mr. Alvarado is listed on IFB's website as the bank's President and CEO, and has worked at IFB in a trusted capacity for the Fierro Group for a number of years. Mr. Castro sold the former Westchester Bank to the Fierro family in 1992, staying on in an executive capacity of the renamed IFB for several more years. Ms. Nicholls-Reyes has been employed with IFB since at least 1992, and is currently its Vice President of Private and Personal Banking. Ms. Camacho is believed to be the IFB officer who handles transactions involving Fierro Group entities.

## ARGUMENT

## APPLICANTS ARE ENTITLED TO DISCOVERY
## IN THIS DISTRICT PURSUANT TO 28 U.S.C. § 1782

28 U.S.C. § 1782 entitles any interested person to obtain discovery located in this district for use in a proceeding before a foreign tribunal. The statute provides as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). Thus, Applicants may obtain discovery under § 1782 by showing that: (1) the person from whom discovery is sought either "resides" or is "found" in this District; (2) the discovery is "for use in a proceeding" before a "foreign or international tribunal"; and (3) Applicants are "interested person[s]." Id.; see also Edelman v. Taittinger, 295 F.3d 171, 175-76 (2d Cir. 2002); In re Bayer AG, 146 F.3d 188, 193 (3d Cir. 1998). All these elements are plainly satisfied here.

Courts have consistently held that once the statutory elements of § 1782 have been satisfied, the court should exercise its discretion liberally to permit discovery. See In re Application of Sarrio S.A., 173 F.R.D. 190, 193 (S.D. Tex. 1995) ("The history of section 1782 indicates that Congress intended federal courts to provide broad assistance to foreign litigants who request permission to conduct discovery in the United States."); Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1102 (2d Cir. 1995) (stating that the policy underlying § 1782 generally obliges district courts to provide discovery assistance). Discovery requests under § 1782 are to be evaluated liberally "in light of the statute's 'twin aims of providing efficient means of assistance to participants in international litigation . . . and encouraging foreign countries by example

7

to provide similar means of assistance to our courts.'" Euromepa S.A., 51 F.3d at 1097 (citation omitted).

In furtherance of this liberal approach, the Supreme Court held in Intel Corp. v. Advanced Micro Devices, Inc., 124 S. Ct. 2466 (2004), that § 1782 contains no "discoverability" prerequisite. See id. at 2480-82. Applicants under § 1782 therefore need not demonstrate that the evidence being sought here would be obtainable or admissible in the foreign litigation or that the applicant had exhausted his ability to seek discovery in that litigation. See In re Letters Rogatory from the Court of First Instance in Civil Matters, Caracas, Venezuela, 42 F.3d 308, 310 (5th Cir. 1995); In re Gianoli Aldunate, 3 F.3d 54, 59-62 (2d Cir. 1993).[6]

Moreover, this Court has refused to concern itself with whether the requested evidence would be obtainable under federal or Florida law. In In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-au-Prince, Republic of Haiti, 669 F. Supp. 403 (S.D. Fla. 1987) ("Haiti"), this Court declined to quash subpoenas for Florida bank records concerning Haiti's former dictator, Jean-Claude Duvalier. See id. at 407 (finding "[n]othing in the language or history" of the federal Financial Privacy Act to shield financial records from 1782 discovery, and "[t]o the extent state law is inconsistent, it is preempted"). Thus, where, as here, all the requirements of § 1782 are satisfied, and in light of Congress' express desire to promote international cooperation in discovery, Applicants' request for discovery should be granted.

---

[6] The Intel decision effectively abrogated the contrary holdings in In re Commissioner's Subpoenas, 325 F.3d 1287 (11th Cir. 2003); United Kingdom v. United States, 238 F.3d 1312 (11th Cir. 2001); and In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago, 848 F.2d 1151 (11th Cir. 1988). See Intel, 124 S. Ct. at 2480-82. In fact, Intel ushered in a return to the pre-existing law of this District, where in 1987, in In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago, 117 F.R.D. 177 (S.D. Fla. 1987), this Court held that it was not necessary in a Section 1782 proceeding to decide whether the domestic laws of Trinidad and Tobago would permit production of bank records in order to authorize such discovery here. Id. at 178.

I.  **Applicants Satisfy All Statutory Requirements of 28 U.S.C. § 1782**

   A.  **Witnesses Reside or Are "Found" in This Judicial District**

Section 1782 requires that the person from whom discovery is sought, or the evidence sought, be "found" in this district. 28 U.S.C. § 1782(a). Each of the witnesses Applicants seek discovery from in this proceeding – International Finance Bank, and its present and former officers and directors, Nelson Alvarado, Myriam Nicholls-Reyes, and Amadeo Lopez Castro – either resides or can be "found" in the Miami area.[7] The documentary evidence sought here is likewise located in Miami.[8]

Specifically, IFB is a Florida registered business corporation, with headquarters at 888 Brickell Avenue, and branches at 3663 SW 8th Street and 8396 SW 8th Street, Miami, Florida. (Application ¶ 20, n.2.) Hence, IFB is a "resident" of Florida for § 1782 purposes. See 1 U.S.C. § 1 (defining "person" to "include corporations"); see also Haiti, 669 F. Supp. at 407 (permitting § 1782 discovery from Florida bank); In re Letter Rogatory from Justice Court, Dist. of Montreal, Canada, 523 F.2d 562, 566 (6th Cir. 1975) (authorizing section 1782 production from Detroit bank); In re Request for Judicial Assistance from Seoul Dist. Criminal Court, Seoul, Korea, 428 F. Supp. 109, 114 (N.D. Cal.) (same for discovery from California bank), aff'd, 555

---

[7]  To be "found" in this district for purposes of § 1782, a person need not reside here as long as he or she is properly served in this district. See Edelman, 295 F.3d at 180 (holding that the § 1782 requirement of being "found" in the district is satisfied by personal service within the district); see also 28 U.S.C. § 1782 note (1949 Acts) (stating that the 1949 amendment to the text of the statute "correct[ed] restrictive language in section 1782 . . . in conformity with original law and permit[ted] depositions in any judicial proceeding without regard to whether the deponent is 'residing' in the district or only sojourning there").

[8]  Discovery of information and documents in this district also extends to the non-privileged materials in the possession of the witnesses' local counsel. See Ratliff v. Davis Polk & Wardwell, 354 F.3d 165, 170-71 (2d Cir. 2003) (holding that attorneys and law firms are susceptible to 1782 discovery with respect to non-privileged information within their possession).

F.2d 720 (9th Cir. 1977). Similarly, Mr. Alvarado, Ms. Nicholls-Reyes, Ms. Camacho, and Mr. Castro, all present or former officers or employees of IFB, reside or work in this district. Accordingly, they are subject to discovery under § 1782.

### B. The Discovery Sought by Applicants Is for Use in a Proceeding in a Foreign Tribunal

Applicants are plaintiffs in the proceeding before the Court of First Instance, No. 54, in Madrid – the court charged with dividing the decedent's estate equally among the five children. (Application ¶ 9 and Ex. 3.) And the discovery sought by Applicants is for use in that case, a pending "proceeding in a foreign tribunal." Applicants, therefore, satisfy the "foreign tribunal" requirement of § 1782. See Lancaster Factoring Co. v. Mangone, 90 F.3d 38, 41-42 (2d Cir. 1996).

Courts commonly grant section 1782 discovery assistance "for use" in foreign inventory and estate proceedings. For example, in In re Gianoli Aldunante, 3 F.3d 54 (2d Cir. 1993), the Court of Appeals for the Second Circuit affirmed the district court's grant of § 1782 discovery into assets of a holding company that was founded by an incompetent for use in a Chilean proceeding taking inventory of the incompetent's assets. The appeals court held that the district court properly informed its exercise of discretion "by looking to the congressional purposes behind section 1782." Id. at 62; see also Esses v. Hanania, 101 F.3d 873, 875-77 (2d Cir. 1996) (affirming discovery for use in Hong Kong estate proceeding); In re Noboa, Misc. No. M18-302, 1995 WL 581713, at *4 (S.D.N.Y. Oct. 4, 1995) (permitting § 1782 discovery for use in foreign inventory and probate proceedings); In re Guy, No. M 19-96, 2004 WL 1857580, at *2-3 (S.D.N.Y. Aug. 19, 2004) (noting that inquiry into possible improper financial transactions involving decedent were central to accurate accounting of estate assets, and that in § 1782 context, anything of use to foreign tribunal is presumptively discoverable).

10

### C.     Applicants Are "Interested Persons" Under 28 U.S.C. § 1782

Applicants are "interested persons" entitled to invoke discovery assistance under 28 U.S.C. § 1782. As plaintiffs in the Spanish proceeding, heirs under their father's will, and co-administrators of their father's estate, Yolanda and Victoria Fierro are unquestionably "interested persons" within the plain meaning of the statute. See, e.g., Intel, 124 S. Ct. at 2478 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782 . . . ."). Although 28 U.S.C. § 1782 was drafted to extend its benefits beyond merely the parties to foreign litigation, such parties are at its core. See S. Rep. No. 88-1580, § 9 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3789 ("A request for judicial assistance under [28 U.S.C. § 1782] may . . . be made in a direct application by . . . a party to the foreign or international litigation.") (emphasis added).

### II.    All Discretionary Factors Weigh Heavily in Favor of Granting Discovery

"Under § 1782, once the statutory requirements are met, a district court is free to grant discovery in its discretion." In re Metallgesellschaft AG, 121 F.3d 77, 78 (2d Cir. 1997). This discretion may be informed by factors such as whether the person from whom discovery is sought is a participant in the foreign proceeding; the nature, character, and receptivity of the foreign tribunal to federal judicial assistance; and the appropriateness and relative intrusiveness of the § 1782 request. Intel, 124 S. Ct. at 2483. These additional "Intel" factors weigh overwhelmingly in favor of granting discovery here.

### A.     Respondents Are Not Participants in the Spanish Litigation, and Thus Are Beyond the Jurisdiction of the Spanish Court

In Intel, the Supreme Court noted that the need for § 1782(a) discovery may be even more "apparent" when, as here, the person from whom discovery is sought is not a participant in the foreign proceeding. 124 S. Ct. at 2483. The Court reasoned that in contrast to parties

before foreign tribunals, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." Id.  None of the witnesses from whom discovery is sought here is a party to the Spanish proceeding or within reach of its jurisdiction.  This Court's intervention is thus essential for a fair and proper division of the estate's assets among the decedent's heirs.

### B. The Spanish Court Has Welcomed Judicial Assistance from American Courts

The character of the Spanish proceeding and the receptivity of Spanish courts to United States judicial assistance counsel in favor of granting discovery here.  The Spanish proceeding here is "clearly judicial in nature, and [does] not appear to differ in most respects from analogous legal proceedings in the United States, in which the discovery [Applicants are] seeking would be readily available and relevant to the litigation." In re Servicio Pan Americano de Proteccion, C.A., 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004).  In addition, Spain has indicated its receptivity to American judicial assistance by signing treaties facilitating such cooperation.  See, e.g., Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163; Treaty on Mutual Legal Assistance in Criminal Matters, U.S.-Spain, Nov. 20, 1990, 1730 U.N.T.S. 113.

Moreover, as discussed above, the Spanish court has repeatedly expressed its approval of the Applicants' efforts to obtain information in the United States about the assets in their father's estate.  Thus, no argument could be made that granting this § 1782 application would interfere with the Spanish proceeding.

Therefore, Applicants respectfully request that this Court authorize the discovery sought by them in this district.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the accompanying Application and Affidavit, Applicants respectfully request that the Court grant their application for § 1782 discovery and enter the proposed Order.

Dated: October 6, 2005
       Miami, Florida

                                      Respectfully submitted,

                                      Coffey & Wright LLP
                                      2665 S. Bayshore Dr.
                                      Miami, Florida 33133
                                      (305) 857-9797

                            By: _____
                                      Robert T. Wright, Jr.
                                      Florida Bar No. 185525

                                      *Counsel for Applicants*

Of Counsel:

Barry H. Garfinkel
Angela G. Garcia
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000